Donald Lee WITT, Appellant,

v.

EASTERN KENTUCKY UNIVERSITY, Appellee.

No. 2005–CA–002054–MR.

Court of Appeals of Kentucky.

Oct. 13, 2006.

Jimmy Dale Williams, Sean M. Pierson, Richmond, KY, for appellant.

Douglas L. McSwain, Joshua M. Salsburey, Lexington, KY, for appellee.

Before ACREE, SCHRODER, and VANMETER, Judges.

## OPINION

ACREE, Judge.

Donald Lee Witt (Witt) appeals from a judgment of the Madison Circuit Court upholding the right of Eastern Kentucky University (EKU) to prohibit its employee, Witt, from subcontracting for a firm which had a contract to perform services for the university. EKU claims this authority under Kentucky Revised Statute (KRS) 164.390. After reviewing the arguments of the parties, we conclude that the plain meaning of the statute prohibits Witt from simultaneous employment by EKU and maintenance of a subcontractor relationship to perform work on campus under a contract between the university and a private business entity. The judgment of the circuit court is thus affirmed.

At the time of this action, Witt had been employed by EKU for over sixteen years. His duties involved work as a master electrician, and he was compensated on the basis of hours worked. Beginning in 1996, Witt subcontracted with Stonewall Voice Data, Inc. (Stonewall) during hours when he was off the clock at EKU. Stonewall had a contract with EKU to install wiring for voice and data lines on campus, and Witt performed some of this work as a paid subcontractor with Stonewall.

In December 2003, EKU's new general counsel sent an email memorandum to various employees in supervisory positions announcing that, pursuant to KRS 164.390, university employees could not perform work on campus outside their regular job duties. This interpretation of the conflict of interest statute specifically mentioned contracts between EKU and Stonewall. The memo noted there was no prohibition against Stonewall contracting with EKU and that university employees were free to contract with Stonewall to perform work on projects unrelated to EKU.

Witt's supervisor informed him of the contents of this memo, and Witt chose to sever all ties with Stonewall and file an action for declaratory judgment and monetary damages. EKU filed a motion for

judgment on the pleadings. The circuit court reviewed the briefs, including EKU's staff handbook and code of ethics, and heard arguments prior to issuing an order on EKU's motion.

Witt argued an interpretation of KRS 164.390 which made the statute inapplicable to his situation and further contended that the lack of a statutory penalty for violations made the statute unenforceable. EKU advanced an interpretation of KRS 164.390 which would apply to prohibit Witt's subcontracting work for Stonewall on EKU projects. In addition, the university argued it had the authority, under KRS 164.365(1), to prevent Witt from continuing to work as a subcontractor on Stonewall's contracts with EKU. The circuit court agreed that KRS 164.365(1) did grant EKU such authority and granted the university's request for judgment on the pleadings. This appeal followed.

■ Witt argues the circuit court erroneously determined that KRS 164.390 and KRS 164.365(1) applied to the facts of this case, allowing EKU to prohibit his work on campus as a subcontractor for Stonewall. The statutes in question read as follows:

**164.390   Interest in contracts prohibited**

No president, professor, teacher, member of the executive council or other officer or employee shall be interested in any contract or purchase for the building or repairing of any structure or furnishing of any supplies for the use of a university or college.

**164.365   Governing boards to have exclusive control of employment, tenure, and official relations of employees; payroll deduction of employee membership organization dues for KCTCS employees**

(1) Anything in any statute of the Commonwealth to the contrary notwithstanding, the power over and control of appointments, qualifications, salaries, and compensation payable out of the State Treasury or otherwise, promotions, and official relations of all employees of Eastern Kentucky University, Western Kentucky University, Murray State University, Northern Kentucky University, and Morehead State University, as provided in KRS 164.350 and 164.360, and of Kentucky State University and the Kentucky Community and Technical College System, shall be under the exclusive jurisdiction of the respective governing boards of each of the institutions named.

Witt contends that his employment as a subcontractor for Stonewall did not violate KRS 164.390. According to his interpretation of the statute, Witt claims he had no personal interest in the contract between Stonewall and EKU. Further, he claims that his work for Stonewall did not involve building or repairing structures on campus and he did not furnish any supplies for the use of the university. Finally, he points out he had been subcontracting with Stonewall for a number of years before EKU prohibited such conduct, and he argues that the lack of a penalty for violating KRS 164.390 renders the statute unenforceable.

There is scant case law interpreting the provisions of KRS 164.390, and none which is of any assistance in resolving the matter before us. When interpreting the language in a statute, we are to assume that the General Assembly intended the statute to mean exactly what it says. *Revenue Cabinet v. O'Daniel*, 153 S.W.3d 815, 819 (Ky.2005). The circuit court's order granting judgment in favor of EKU states that "[Witt], as a subcontractor with Stonewall, clearly has a pecuniary interest in a contract between Stonewall and EKU where

Stonewall has subcontracted with [Witt] to perform work."

Witt's claim to have no authority or influence over contracts between Stonewall and EKU does not persuade us. The operative word here is "interest", not authority or influence, and Witt has a clear interest in the Stonewall contract.

Stonewall's contract with EKU makes possible the subcontract work Witt would perform on campus for his own pecuniary gain. Furthermore, if Stonewall performs its EKU contract without a performance bond and fails to pay Witt, he could assert lien rights against EKU, at least with regard to the funds set aside by the university for the purpose of completing Stonewall's work. *Fidelity & Cas. Co. of New York v. Board of Regents of Eastern Kentucky State Normal School and Teachers College*, 287 Ky. 439, 152 S.W.2d 581, 584 (1941). If Stonewall does have a performance bond as is often the case, all of its subcontractors, including Witt, are third party beneficiaries of that contract. *Wehr Constructors, Inc. v. Steel Fabricators, Inc.*, 769 S.W.2d 51, 56 (Ky.App.1988). Thus we agree with the circuit court's plain reading of the statute prohibiting Witt's interest in the Stonewall contract. Witt has an interest in the Stonewall/EKU contract.

Witt contends that KRS 164.390 does not apply to his specific subcontracting activities for Stonewall. The work he performed consisted primarily of installing wiring for voice and data transmission in buildings which had already been built. Because the wiring could be removed at any time without damaging the buildings, Witt argues that he was not engaged in building or repairing any structures. Further, he personally did not supply any of the wiring used on campus.

The circuit court found it unnecessary to directly address Witt's interpretation of the language of KRS 164.390 relating to "the building or repairing of any structure or furnishing of any supplies for the use of a university...." Instead, the circuit court found that KRS 164.365(1), which grants EKU exclusive jurisdiction over his employment and official relations, encompassed the university's prohibition against Witt's subcontracting with Stonewall to perform work on campus. Regardless, we disagree with Witt's argument that KRS 164.390 did not encompass his subcontracting work for Stonewall. In order to adopt his interpretation of the statute, we would have to disregard the plain meaning of the words "interested in any contract or purchase for the ... furnishing of any supplies for the use of a university or college." This we will not do.

■ Witt's final contention is that KRS 164.390 is not enforceable against him. He claims that EKU was on notice that he was performing subcontracting work on campus for several years prior to taking any action to prohibit such conduct. Further, he points to the lack of a statutory penalty for violating KRS 164.390. He fails to offer, and we fail to discover, any authority supporting either of these contentions. Thus, we find them to be without merit.

For the foregoing reasons, the judgment of the Madison Circuit Court is affirmed.

ALL CONCUR.